# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **KIERRA LACHELLE DOWLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cv-00522** |
| | ) | **Judge Aleta A. Trauger** |
| **THE CITY OF SPRINGFIELD** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Before the court is defendant City of Springfield's Motion for Summary Judgment (Doc. No. 65), supported by a Memorandum of Law (Doc. No. 66), Statement of Undisputed Material Facts ("SUMF") (Doc. No. 68), and the Declarations of Jason Head, as former Chief of Police for the Springfield Police Department ("SPD"), and Charles Bogle, a police officer with the SPD at the time the events giving rise to the plaintiff's claims occurred (Doc. Nos. 67-1, 67-2). The plaintiff has not responded to the motion. For the reasons set forth herein, it will be granted.

## I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, any party "may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The movant must show that the material facts are not "genuinely disputed" by citing to evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials." Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists

when there is sufficient evidence for a trier of fact to find for the non-moving party." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). The court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

"Even when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011). But the trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). "If such evidence supports a conclusion that there is no genuine issue of material fact," the court should grant summary judgment for the movant. *Id.*

## II.     PROCEDURAL HISTORY

The plaintiff initiated this lawsuit through counsel by filing her original Complaint in this court on April 28, 2024, naming as defendants only the City of Springfield (the "City") and "Officer Defendants John Does 1–7," all allegedly SPD employees. (Doc. No. 1 ¶ 3.) Generally, she alleged that these police officers entered her home and conducted a search without a warrant, in the process throwing her to the ground and handcuffing her without probable cause. She asserted claims against the individual officers under 42 U.S.C. § 1983 for false arrest, unreasonable seizure, and excessive force, along with various state law tort claims. She also asserted a municipal liability claim against the City.

The City answered the Complaint on June 17, 2024, asserting that the plaintiff was "mistaken as to the identity of the officers involved in the incident described in the Complaint" and that, in fact, the officers were employed by the Robertson County Sheriff's Department ("RCSD") and the Tennessee Bureau of Investigation ("TBI"). (Doc. No. 9 ¶¶ 4, 6, 11, 35, 50, 61; *see also id.* at 15, Affirmative Defense ¶ 1.)

The plaintiff thereafter sought and was granted leave to amend her Complaint to add the TBI and RCSD as defendants. (*See* Am. Compl., Doc. No. 13.) However, those defendants' Motions to Dismiss were granted—the TBI's on immunity grounds and the RCSD's on the grounds that the claims against it were time-barred. (*See* Doc. Nos. 10, 11, 13, 40, 42.) The court also denied as futile the plaintiff's motion for leave to file a Second Amended Complaint. (Doc. Nos. 32, 40, 42.) The only defendants remaining after these rulings are the City of Springfield and "John Does 1 through 7." The only claim clearly asserted against the City is Count IV, for "Municipal Liability." (*Id.* at 9.) In addition, the plaintiff may be asserting that the City is vicariously liable for its employees' intentional torts (assault, battery, false imprisonment, and intentional infliction of emotional distress) as alleged in Counts V–VIII.

The plaintiff has never identified or served the John Doe defendants, aside from asserting that they are SPD employees. (*See* Doc. No. 13 ¶ 5.). The Initial Case Management Order entered in May 2025 again put the plaintiff on notice of the City's position that no SPD police officers entered the plaintiff's residence and that, "even if Plaintiff were correct about the identity of the John Doe officers named in this case . . . , the statute of limitations has lapsed against any individual officer." (Doc. No. 47 at 2.) The Initial Case Management Order also set deadlines for fact discovery, dispositive motions, and responses to dispositive motions. (*Id.* at 3.)

The City timely filed a Motion for Summary Judgment and supporting documents. The plaintiff, who is no longer represented by counsel,[1] was notified by Order entered on February 2, 2026 that she needed to respond to the defendant's Motion for Summary Judgment by March 2, 2026, and she was also advised of resources available upon request to the Clerk's Office to assist *pro se* litigants. (Doc. No. 69.) The plaintiff filed a document entitled "Continuance," in which she asked the court to continue "the hearing/trial currently scheduled for March 2nd 2026"[2] based on "lack of time of preparation." (Doc. No. 70.) She also requested the appointment of counsel. (*Id.*) The court denied the motion (Doc. No. 71), but the plaintiff never responded to the Motion for Summary Judgment or the SUMF. Despite the plaintiff's failure to respond, as set forth above, the court must still determine whether the defendant has established that the relevant facts are uncontroverted and that it is entitled to summary judgment as a matter of law.

## III. FACTS[3]

In April 2023, Jason Head was the Chief of Police for the SPD. (Doc. No. 67-1, Head Decl. ¶ 2.) Charles Bogle was an SPD police officer. (Doc. No. 67-2, Bogle Decl. ¶ 2.)

---

[1] Plaintiff's counsel was allowed to withdraw in November and December 2025. (Doc. Nos. 55, 61.) By Order entered on December 22, 2025, the plaintiff was given until January 26, 2026 to either have new counsel enter an appearance on her behalf or to file a notice with the court that she would be representing herself going forward. (Doc. No. 62.) She did neither.

[2] In fact, the trial is set for June 30, 2026, not March 2, 2026. (Doc. No. 48.)

[3] The defendant references Judge Richardson's opinion in *McLemore v. Gumucio*, 619 F. Supp. 3d 816 (M.D. Tenn. 2021), in a footnote to its Memorandum and states that it includes "background" facts that are not in its SUMF. (*See* Doc. No. 66 at 2 n.1.) The undersigned notes that it generally agrees with Judge Richardson's observation that legal principles are not properly included in Rule 56.01 statements of undisputed material fact and that statements of fact should generally be concise. *See id.* at 826; *see also* L.R. 56.01(c)(1). While unnecessarily lengthy statements of fact may violate the Local Rule, this court has also observed that "unnecessarily succinct ones are equally unhelpful" and that a "statement of facts should not be so concise as to require the court to search elsewhere in the record to piece together the facts that make up the case and whether they are disputed." *Morris v. ReVida Recovery Centers, LLC*, No. 3:22-cv-00931, 2024 WL 3836083, at *2 (M.D. Tenn. Aug. 15, 2024).

On April 29, 2023, a multi-jurisdiction law enforcement unit consisting of officers from the RCSD, the TBI, the City of Greenbrier Police Department, and the SPD was responsible for executing outstanding arrest warrants throughout Robertson County. (Head Decl. ¶¶ 3, 4.) Bogle served on this unit and Head supervised him in that capacity. (*Id.* ¶¶ 4–5.) The unit was led by "County Agent Towers" (Bogle Decl. ¶ 4), and Head rode with Robertson County Sheriff Van Dyke to the warrant locations (Head Decl. ¶ 5).

Among the warrants scheduled for execution that day was one issued for a suspect named Christina Dowlen; the address on the arrest warrant was 100 Southfield Drive, Apartment D8, Springfield, Tennessee. (Bogle Decl. ¶¶ 5–6; Head Decl. ¶¶ 6–7.) The property manager for 100 Southfield Drive confirmed that Christina Dowlen resided in Apartment D8. (Bogle Decl. ¶ 7; Head Decl. ¶ 8.)

Upon arrival at the apartments at 100 Southfield Drive, Bogle followed County Agent Towers and TBI Agent Clay Sheley to the front door of Apartment D8, on the second floor of the building, while Head remained on the first floor with Sheriff Van Dyke. (Bogle Decl. ¶ 8; Head Decl. ¶ 9.) According to Head, he remained on the first floor of the Southfield Apartments throughout the events that took place that day. (Head Decl. ¶ 9. ) Consequently, he did not speak to or physically contact the plaintiff at any time and did not witness the events that are alleged to have taken place. (*Id.* ¶¶ 10–12.)

Bogle attests that, once the group arrived at the front door of Apartment D8, Agent Towers knocked on the door and announced police presence. (Bogle Decl. ¶ 9.) A person later identified as plaintiff *Kierra* Dowlen "partially opened the door but kept the chain guard attached." (*Id.* ¶ 9.) The plaintiff fit the description of suspect Christina Dowlen. (*Id.*)

Agent Towers stated that he had an arrest warrant for "her."[4] (*Id.* ¶ 11.) The plaintiff demanded a copy of the warrant and momentarily closed the door to retrieve her identification. (*Id.* ¶ 12.) According to Bogle, when she returned, the plaintiff partially opened the door and slid her identification card through the opening. (*Id.* ¶ 13.) Towers could not read the card, but the plaintiff would not give it to him. (*Id.*) However, she notified Towers that she was not Christina Dowlen. (*Id.* ¶ 14.)

Bogle then spoke with a neighbor who entered the breezeway where the front door to Apartment D8 was situated and who confirmed that Christina Dowlen resided in Apartment D8. (*Id.* ¶ 15.) The same neighbor told the plaintiff to "just give [the officers]" her identification card, but the plaintiff did not. (*Id.* ¶ 16.) However, she removed the chain from the door and opened the door completely. (*Id.* ¶ 17.) Towers ordered her to step out of the doorway, but the plaintiff did not. (*Id.*) Instead, she remained in the doorway and used her cellphone to video record the event, and she began asking each unit member's name and badge number. (*Id.* ¶ 18.)

During this time, Towers and TBI Agent Sheley had a conversation that Bogle could not hear. (*Id.* ¶ 19.) While the plaintiff continued to record, Sheley moved to place her in handcuffs. The plaintiff resisted and dropped her phone on the doormat outside Apartment D8. (*Id.* ¶ 20.) Bogle picked up the phone so it would not be damaged. (*Id.*)

After the plaintiff was handcuffed, Towers, Sheley, and a Greenbrier police officer conducted a "protective sweep" of Apartment D8. (*Id.* ¶ 21.) The plaintiff remained handcuffed for approximately five minutes. (*Id.* ¶ 24.) At some point, the unit confirmed that the plaintiff was

---

[4] Bogle does not explain what he means by "her." The court presumes, based on context, that Towers used the term "you," addressing the person who answered the door, whom he assumed to be Christina Dowlen.

Kierra Dowlen, the suspect's sister, and she was released. (*Id.* ¶¶ 25–26.) The plaintiff asserted that she was staying at her sister's residence. (*Id.* ¶ 25.)

According to Bogle, he did not at any point enter Apartment D8 or make physical contact with the plaintiff. (*Id.* ¶¶ 22–23.)

## IV.    DISCUSSION

The City asserts that it is entitled to summary judgment, because the plaintiff presents no evidence showing that any City employee violated the plaintiff's constitutional rights and neither alleges nor shows that a City policy was the moving force behind any alleged constitutional violations, as required by the municipal liability doctrine first elucidated by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). It also asserts that, because the plaintiff's state law tort claims arise out of alleged civil rights violations, the City is immune from suit on those claims under Tenn. Code Ann. § 29-20-205(2).

### A.    Municipal Liability under 42 U.S.C. § 1983

#### 1.    Legal Standard

Generally, to prevail on a § 1983 claim, a plaintiff must prove (1) that she "was deprived of a right secured by the Constitution or laws of the United States, and (2) that [she] was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000). It is now well established that a municipality may be liable under § 1983, but it can only be liable for its own acts. *Monell*, 436 U.S. at 690–91. Thus, to prevail on a § 1983 claim against a municipality under *Monell*, "the plaintiff must prove both that (1) [she] 'suffered a constitutional violation' and (2) 'a municipal policy or custom directly caused the violation.'" *Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, No. 21-3684, 2022 WL 1308513, at *2 (6th Cir. May 2, 2022) (quoting *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017)); *see also Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 573 (6th Cir. 2016)

("To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's constitutional rights." (quoting *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007)).

In other words, a city cannot be liable under § 1983 where its officers or employees have not committed any underlying constitutional violation. *See City of Los Angeles v. Heller*, 474 U.S. 796, 799 (1986) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.").

### 2.      Application

The City argues, based on the uncontroverted facts set forth above, that the plaintiff cannot establish that any City employee involved in the April 29 incident—Bogle or Head—personally took part in the events that allegedly violated the plaintiff's constitutional rights and, therefore, cannot establish that the City is liable. (Doc. No. 66 at 7.) The court agrees. As set forth above, Head was on a different floor and was not involved in any of the events that took place in Apartment D8. Bogle attests that he did not enter the apartment and did not physically contact the plaintiff, so he did not participate in the allegedly illegal search, seizure, or arrest. Because the plaintiff cannot establish that Bogle or Head—the only City employees involved in the incident—violated the plaintiff's constitutional rights, the plaintiff cannot establish that any City policy or custom was the moving force behind any alleged constitutional violation. For this reason alone, the City is entitled to summary judgment.

Even if the court accepts the plaintiff's allegations that her constitutional rights were violated by the other officers' actions, the plaintiff must tie that violation to a specific City policy or custom. *See Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) ("A plaintiff

asserting a municipal liability claim under *Monell* 'must connect the employee's conduct to a municipal "policy" or "custom."'" (quoting *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022)). To make this showing, the plaintiff must demonstrate

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). In addition, the plaintiff also must show that the City, "through its deliberate conduct," was the "'moving force' behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

The Amended Complaint does not allege any particularized facts connecting the John Doe defendants' actions to an unlawful City policy or custom. Under Count IV, the plaintiff asserts, in a wholly conclusory fashion:

> 70. The City of Springfield, Tennessee . . . [is] liable for the conduct alleged herein under a theory of municipal liability for permitting, encouraging, tolerating, and knowingly acquiescing to an official pattern, practice, and policy or custom within the Springfield Police Department . . . of violating the rights of its citizens.
>
> 71. The City of Springfield [is] also liable for the conduct alleged herein for failure within the Springfield Police Department . . . to train officers regarding their obligations under the Fourth and Fourteenth Amendments and the laws of the State of Tennessee in order to prevent violations of the same and harm to the citizenry as a result thereof.

(Doc. No. 13 ¶¶ 70–71.)

To be clear, these are unverified allegations, not facts supported by evidence. Even if the pleading were verified, however, these conclusory assertions are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are insufficient to give a claim "facial plausibility" or to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiff has presented no evidence to contradict the City's version of events, as embodied in the Declarations of Bogle and Head. Based on the uncontroverted facts, the City is entitled to summary judgment as a matter of law on the plaintiff's § 1983 claim against the City.

## B.    State Law Tort Claims

Insofar as the plaintiff seeks to impose vicarious liability on the City for the intentional torts allegedly committed by the John Doe defendants, the City asserts that the facts show that Bogle and Head did not commit any torts for which the City could be vicariously liable and that, even if the plaintiff had any evidence to the contrary, the City is entirely immune from liability under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-205(2) (2024).

Again, the court finds that the City is entitled to summary judgment. First, the uncontroverted facts establish that Bogle and Head did not engage in the alleged acts that gave rise to the plaintiff's claims. While the doctrine of *respondeat superior* establishes that "an employer may be held vicariously liable for torts committed by its employee within the course and scope of his or her employment," *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 735 (Tenn. Ct. App. 2018), the City cannot be liable for the acts of individuals it did not employ.

Second, under the TGTLA, a municipality retains immunity for injuries that "arise[] out of" "false arrest, malicious prosecution, . . . infliction of mental anguish, . . . or civil rights." Tenn. Code Ann. § 29-20-205(2). The plaintiff's false arrest and intentional infliction of emotional distress explicitly fall within the scope of the City's immunity. Moreover, her assault and battery claims "arise[] out of" her civil rights claims for false arrest and the use of excessive force. As such, the City is immune from the assault and battery claims as well. *Accord Kelley v. Root*, No. W2022-01625-COA-R3-CV, 2024 WL 323320, at *12 (Tenn. Ct. App. Jan. 29, 2024) (affirming summary judgment for the government entity defendant on the plaintiff's assault and battery

claims "under the civil rights exception to the GTLA"); *Ruiz v. City of Lafayette*, No. 2:23-CV-00023, 2024 WL 735646, at *6 (M.D. Tenn. Feb. 21, 2024) (Crenshaw, J.) (dismissing assault and battery claims under the TGTLA as "essentially companion claims" to the plaintiff's civil rights claims); *Campbell v. Anderson Cnty.*, 695 F. Supp. 2d 764, 777–78 (E.D. Tenn. 2010) (same, dismissing under the TGTLA the plaintiff's false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence claims because they were "alleged to have been committed solely in the context of the violation of [the plaintiff's] civil rights").

In sum, the plaintiff cannot show that Bogle and Head committed tortious acts for which the City could be vicariously liable; even if she could, the City is immune from claims arising from civil rights violations. The City is therefore entitled to summary judgment on the plaintiff's state law tort claims.

## V.      CONCLUSION

For the reasons set forth herein, the City's Motion for Summary Judgment (Doc. No. 65) will be granted, and the claims against the City will be dismissed with prejudice.

The claims against the John Doe defendants remain pending. The plaintiff, however, has never identified or served the John Doe defendants, and the claims against them are now clearly time-barred. Through this Memorandum (and the accompanying Order), the plaintiff is placed on notice that her claims against the John Doe defendants will be dismissed without prejudice unless the plaintiff shows good cause for the failure to serve them within 90 days after the Complaint was filed. Fed. R. Civ. P. 4(m).

An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge